E-FILED
Friday, 22 July, 2022  02:33:11 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS PEORIA DIVISION

| | | |
|---|---|---|
| JERAMY L. DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Criminal Case No. 18-10010 |
| v. | ) | Civil Case No. 21-1268 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### <u>OPINION AND ORDER</u>

Pending before the Court is Jeramy L. Davis's Motion to Vacate under 28 U.S.C. § 2255.

(ECF No. 62). For the reasons stated below, Petitioner's Motion is denied in part.

### BACKGROUND

The underlying conviction arose from a traffic stop that occurred on February 21, 2018. ECF No. 51 at 6. Petitioner was pulled over because officers ran his license plates and discovered that the owner of the vehicle had a suspended license. ECF Nos. 28 at 2; 51 at 6. The passenger, Colleen Wiles, provided officers with approximately 3 grams of methamphetamine when officers asked if she had anything on her. ECF No. 51 at 6. Wiles stated that someone gave her the meth to hold before getting pulled over. *Id*. An inventory search of the vehicle revealed a total of four methamphetamine pipes and a small amount of marijuana, as well as a glass pipe in Wiles's bag. *Id*. at 6. Petitioner was taken into custody and his vehicle was impounded. *Id*. Petitioner posted bail and was released the same day. *Id*. A confidential informant told investigators that defendant began soliciting people to raise money to get his vehicle out of impound prior to it being searched because Petitioner had a significant amount of meth in the vehicle that police had not initially found. *Id*. Police obtained a search warrant and discovered 93 grams of meth in a secret

1

compartment as well as four cellphones and other drug paraphernalia. *Id*. Police downloaded and reviewed the contents of the cellphones pursuant to the search warrant and discovered numerous communications where defendant was negotiating with his source to provide large amounts of meth. *Id*. Using this information, the police obtained a search warrant for Petitioner's house. *Id*. Investigators executed the search warrant at defendant's residence where they also took Petitioner into custody without incident. *Id*. Defendant verbally waived his *Miranda* rights and admitted there was methamphetamine in the home. He also admitted that any firearms found in the home belonged to him *Id*. at 7. Police located approximately 40 grams of methamphetamine and four firearms in separate locations throughout the house. *Id*.

The Government initially brought a Criminal Complaint against Petitioner for possession of 50 or more grams of methamphetamine with the intent to distribute in violation of 21 U.S.C. Section 841(a)(1) and (b)(1)(B). ECF No. 1. Petitioner was later formally indicted on three Counts: two counts of possession of methamphetamine with intent to distribute and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF No. 10. The Government later brought a superseding indictment making minor modifications. ECF No. 20. Petitioner was released on bond to a Residential Substance Abuse Treatment Center over the Government's objection. Docket Entry 4/16/2018.

Petitioner was first represented by Karl Bryning from the Federal Public Defender's Office, but Mr. Bryning filed his Motion to Withdraw after Petitioner retained Charles Gregory Schierer as private counsel. ECF No. 26. Shortly after Petitioner retained Mr. Schierer, he filed a Motion to Suppress. ECF No. 27. In that Motion, Counsel challenged the legality of the traffic stop and the scope of the search warrant for his arrest. Counsel argued that law enforcement conducted the February 21, 2018 traffic stop without a reasonable and articulable suspicion that Petitioner had

violated a criminal statue. Counsel also argued that law enforcement exceeded the scope of the search warrant for Petitioner's residence. Petitioner's motion essentially argued that the police did not have enough information to pull over his vehicle and were operating on a mere hunch. *Id*. Through this stop, the police ultimately found approximately 96 grams of methamphetamine, a digital scale, a pipe, a syringe, multiple cellphones, pills, and brass knuckles in Petitioner's vehicle. *Id*. at 3. Based upon the paraphernalia found in Davis's car, a judge later granted a search warrant of Defendant's residence where police found more methamphetamine, drug paraphernalia, and multiple firearms. *Id*. at 4. Petitioner argued in his motion to suppress that the search warrant was for methamphetamine and other paraphernalia—not for guns. Accordingly, Petitioner argued that the seizure of firearms was illegal and should be suppressed. ECF No. 28 at 9.

Shortly after Petitioner filed the Motion to Suppress, the Probation office filed a petition to revoke Petitioner's release because Petitioner attempted to cash a fraudulent check and a second check was found on Petitioner's person. The drug program advised that it was unsuccessfully discharging Petitioner from its program, and he would not be allowed to reside in their facility. ECF No. 29 at 2. Petitioner withdrew his Motion to Suppress without the Government responding and indicated he would like to enter a guilty plea. ECF No. 32.

Petitioner signed a Plea Agreement and Stipulation of Facts for Count One Possession of Methamphetamine with Intent to Distribute and Count Three, Possession of a Firearm in Furtherance of Drug Trafficking Crime. ECF No. 36. The plea agreement explained that the Possession of Methamphetamine with Intent to Distribute charge carried sentence of no less than ten years and that his Possession of a Firearm charge carried a sentence of no less than five years. *Id*. at 4–5. Defendant broadly waived his appeal and collateral attack rights. *Id*. at 6. The agreement clarified that this waiver did not apply to a claim of ineffective assistance of counsel. *Id*. Davis

3

also agreed to fully cooperate with law enforcement official and the plea agreement contained provisions about any possible downward deviations based on U.S.S.G. 5K1.1 or Federal Rule of Criminal Procedure 35(b) as a result of his cooperation. *Id.*

The Court ultimately accepted Petitioner's guilty plea and set a sentencing hearing. ECF No. 42. Shortly after the Court accepted Petitioner's guilty plea, Mr. Schierer filed a motion to withdraw Defendant's guilty plea explaining that Petitioner believed Mr. Schierer wrongly advised him on whether he had a meritorious motion to suppress. ECF No. 43. Counsel explained that there was a police report that says that the detective verbally advised Petitioner of his *Miranda* rights, but that Petitioner refused to sign the form waiving *Miranda* rights. Petitioner believed that the form was required for his *Miranda* warning to have been administered properly. *Id*. at 2. Petitioner believed that the case *Fellers v United States*, 540 U.S. 529 (2004) supported his motion and that his attorney failed to file a meritorious motion that would have prevented defendant from entering a guilty plea. *Id*. Schierer subsequently filed a motion to withdraw as Counsel due to Petitioner's belief that he provided ineffective assistance of counsel. ECF No. 44.

Mr. Schierer was replaced with Christopher McCall who eventually made clear that Petitioner wished to move forward with the guilty plea by filing a Motion to Withdraw the Motion to Withdraw Guilty Plea. ECF No. 50. In that motion, Counsel explained that Defendant and Counsel met three times over the past ten days to discuss his case. *Id*. He explained that Defendant and Counsel concluded that Defendant's attempts to withdraw his guilty plea were not based on accurate interpretations of *Fellers v. United States*, 540 U.S. 519 (2004) and *Miranda v. Arizona*, 381 U.S. 436 (1966). *Id*. Counsel further assured the Court that Defendant did not mean to deceive the Court, but his misinterpretation was based in part on his lack of legal background. *Id*.

4

At sentencing, it was clear Petitioner understood that he was subject to mandatory minimum sentences. He spoke before the Court to explain his addiction and his use of firearms. He also acknowledged that "I know I can't say anything for you guys to change my sentencing." ECF No. 59 at 8. The Court imposed the mandatory minimum sentence of 120 months as to Count 1 and 60 months as to Count 3 to run consecutive to Count 1. ECF No. 54. The Court ordered that his sentence would run concurrently to any sentences imposed in Fulton County, Illinois. *Id*. Petitioner did not appeal his sentence, but nearly a year after his sentencing, he filed the instant § 2255 petition.

Petitioner claims each of his three attorneys, Karl Bryning, Charles Schierer, and Christopher McCall were ineffective because Davis believes that he could have either been successful at trial or he could have reduced his sentence for his offenses of possession of at least 50 grams or more of methamphetamine with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. The Court found Petitioner waived his attorney-client privilege as to the issues raised in his § 2255 Petition and ordered Petitioner's prior counsel to submit affidavits addressing the manner Petitioner believed counsel was ineffective. Petitioner has responded, and this order follows.

## LEGAL STANDARD

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that his sentence was imposed "in violation of the Constitution or laws of the United States . . ." 28 U.S.C. § 2255(a). If a petitioner is able to successfully assert a violation, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). This is an extraordinary remedy because a petitioner seeking § 2255 relief

has already "had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Post-conviction relief under § 2255 "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotations and citation omitted). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

A § 2255 motion does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). Mere speculation does not warrant an evidentiary hearing, as the petitioner must file a detailed and specific affidavit showing "the petitioner has actual proof of his allegations beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). It is well-established that the affidavit is "a threshold requirement; its absence precludes the necessity of a hearing." *Id.*

A claim of ineffective assistance of counsel is appropriate to bring in a § 2255 motion. "The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the *Strickland* test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

6

In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotations and citation omitted). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" *Atkins v. Zenk*, 667 F.3d 939, 944–45 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

## DISCUSSION

Plaintiff brings most of his claims under the larger umbrella of ineffective assistance of counsel and lists eight grounds for potential relief. Petitioner repeats some allegations throughout the complaint and other allegations overlap. The Court addresses each of Petitioner's claims as it understands them.

### a. The Court has subject matter jurisdiction over this controversy

Petitioner claims that the Court did not have subject matter jurisdiction and the judgment is void. He claims that the cause was not lawfully instituted and must be set aside. He notes that the prosecution was initially instituted by a criminal complaint, without notice or a hearing, which he claims violates his Constitutional rights. He also objects to being charged with possession with intent to distribute because he claims that the officer had no information that the methamphetamine

was for distribution. Petitioner also claims that he could not have knowingly waived his right for a preliminary hearing and that either his attorney or the Government withheld the necessary information from him.

As an initial matter, 18 U.S.C. § 3231 authorizes the court's statutory power to adjudicate this case as it was brought under 21 U.S.C. § 841, et. al. As to the claims regarding his waiver of preliminary injunction and receipt of the complaint, the record indicates that Davis received a copy of his complaint in open court on March 5, 2018, and that he was advised of—and waived—his right to a preliminary hearing. Docket Entry 3/5/2018. This is further confirmed by Mr. Bryning's affidavit that he provided Davis with all the information received from the Court and consulted with Davis regarding the waiver of the preliminary hearing. ECF No. 78-1. Petitioner's claims on this issue are without merit.

**b. Petitioner has not supported his claim that Attorney Karl Bryning provided ineffective representation.**

Petitioner appears to complain that the proceedings were initiated by a criminal complaint as opposed to an indictment approved by a Grand Jury. Rule of Criminal Procedure 3 clarifies that a Complaint made under oath before a magistrate judge (or other certain judicial officers if a magistrate is not reasonably available) may issue. Fed. R. Crim. Pro. 3. If the criminal complaint or the accompanying affidavits establish probable cause, the judge must issue an arrest warrant or a summons if the attorney for the Government requests it. Fed. R. Crim Pro. 4(a). Then the person must be brought before a magistrate (or in some cases another judicial office), for an initial appearance. Fed. R. Crim. Pro 5(a). The judge must inform the defendant of the complaint and any affidavit and the right to a preliminary hearing. Fed R. Crim. Pro 5(d). Rules 7 explains that other than criminal contempt, an offense must be prosecuted by an indictment if it is punishable by more than one year in jail or by death. Fed. R. Crim. Pro. 7. Accordingly, it was necessary for the

Government to obtain an indictment here and they did so just a few weeks after filing the Complaint. However, Petitioner has not supported his assertion that the process of obtaining an arrest warrant was improper. He was indicted as the Federal Rules and Fifth Amendment to the Constitution require. Accordingly, Mr. Bryning was not ineffective for failing to act because this process followed the Federal Rules of Criminal Procedure, and the Constitution and Petitioner's assertions are frivolous.

Petitioner also claims that Mr. Bryning failed to negotiate a better plea with the Government and failed to investigate law or facts in his case. Petitioner does not make any specific assertions regarding how the plea negotiation process was prejudicial to him. In the plea context, counsel renders deficient performance if he fails to timely advise his client of a formal plea offer *Frye*, 566 U.S. at 145. or if he provides legally incorrect or unreasonable advice about whether to accept the plea offer. *Lafler v. Cooper*, 566 U.S. 156, 167–168 (2012). Petitioner's unsupported allegation that a better deal should have been possible does nothing support his allegation that Mr. Bryning was ineffective. Notably, Petitioner was facing multiple mandatory minimum sentences.

Mr. Bryning submits the plea agreement (ultimately the same plea agreement Davis later entered into, with different counsel) was the best one available under the circumstances and represented the lowest sentence offered by the Government. ECF No. 78-2. Davis argues, without development, that Mr. Bryning also failed to file motions or investigate; Mr. Bryning states that he fully reviewed all the discovery, evaluated several possible grounds for suppression, and believed none would be non-frivolous. ECF No. 78-2. Petitioner also did not enter into the plea agreement while Mr. Bryning representing him. He obtained private counsel who did file a motion to suppress before Defendant ultimately agreed to enter into the negotiated plea agreement.

Accordingly, Davis's assertions as to Mr. Bryning are not sufficiently supported and are therefore denied.

### c. The record does not support Plaintiff's assertion that the plea agreement was not knowing and voluntarily entered or that the facts did not support his conviction.

In Count Three, Plaintiff asserts that the plea agreement was not knowing and voluntary because the facts did not support the convictions. He specifically claims that the Government did not show that he intended to sell the drugs found in his vehicle or his home. He also claims that the test that the Government conducted on the drugs cannot give the purity of a drug which was necessary to support his conviction. In Count Four, Plaintiff asserts that the Government lied when it said that it obtained a statement from Martina LeBegue, his girlfriend.

A review of the stipulations of facts in his plea agreement and the Rule 11 plea colloquy evidence a factual basis to support the charges. Petitioner also admitted to the Government that he sold methamphetamine. ECF No. 78-5. The quantity alone, over 50 grams, goes far to support that Petitioner intended to distribute these drugs. The plea agreement also outlines that the police located three digital scales, approximately three-hundred small square plastic baggies, and various drug paraphernalia, which supports an inference of drug dealing as opposed to personal use. *See United States v. Irby*, 558 F.3d 651 (7th Cir. 2009) (citing government witnesses testifying that crack quantity was inconsistent with personal use, that its packaging in fifty-nine individual baggies, and the presence of scales also suggested that the crack had been prepared for sale in determining that the record was not devoid of evidence of [Defendant's] guilt). The cell phone records also contained communications Petitioner had with his sources requesting large amounts of drugs. The unobjected-to revised presentence report further indicates that a purity analysis was indeed conducted. ECF No. 51 at 6. The evidence that the methamphetamine was intended for

distribution is overwhelming and includes Petitioner's own admission that the drugs were for distribution.

Petitioner also acknowledged that after his police stop on February 20, 2018 when his car was impounded, there was a violent encounter at his home due to his inability to pay people after the police confiscated his methamphetamine. ECF No. 78-5 at 2–3. At the time, Petitioner already had several guns in the house for hunting but had not been hunting in a while. He admitted that he placed the guns around the house for protection after this incident. He stated that this was the first time he had used the guns to protect himself and his drug business. *Id*.

After the violent encounter, Petitioner continued to pursue his drug business. *Id*. He gathered money to restock his supply of methamphetamine. He purchased 1.5 ounces on one trip and apparently restocked on another occasion as well. *Id*. The break-in, Petitioner placing loaded guns around his home, and Petitioner restocking his methamphetamine supply happened shortly after his initial February 2018 arrest. Petitioner did not learn his lesson; he instead returned to and escalated his drug dealing behavior. Petitioner also signed the plea agreement admitting his conduct and made statement during his hearing on his plea agreement admitting his guilt.

Moreover, Davis's claim here is both waived and procedurally defaulted. Davis waived his rights to appeal or collaterally attack his conviction and sentence except for any claims of ineffective assistance of counsel. ECF No. 36 at 6–7. The agreement is clear that the waiver includes any claim that "the conduct to which defendant has admitted does not fall within the scope of the statute(s)." *Id*.

 A defendant may waive the right to appeal his conviction and sentence, as well as the ability to challenge either in a collateral attack. *United States v. Mboule*, 23 F.4th 756 (7th Cir. 2022); *United States v. Alcala*, 678 F.3d 574, 577 (7th Cir. 2012); *Keller v. United States*, 657 F.3d

675, 681 (7th Cir. 2011). The Seventh Circuit has repeatedly held "that a voluntary and knowing waiver of an appeal is valid and must be enforced." *Dowell v. United States*, 694 F. 3d 898 (7th Cir. 2012) (internal citations omitted). Courts have declined to enforce an otherwise valid appeal waiver only in a few limited circumstances—for example, "when the sentence exceeds the statutory maximum, when the plea or court relies on a constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation of the plea agreement." *Dowell*, 694 F.3d at 902; *United States v. Nulf*, 978 F.3d 504, 506 (7th Cir. 2020).

The wavier of an appeal must be knowing and voluntary. *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002). A review of the change of plea hearing confirms Petitioner's waiver was knowing and voluntary. *Alcala*, 678 F.3d at 578–79 ("In assessing the knowing and voluntary character of the defendant's waiver, the court should lend particular credence to the defendant's representations to the court during his plea colloquy, during which he is obligated to tell the truth."); *see also United States v. Chapa*, 602 F.3d 865, 869 (7th Cir. 2010). Plaintiff's attorneys Mr. Schierer and Mr. McCall both independently confirm that they reviewed the plea agreement with Petitioner, in depth. ECF Nos. 78-2; 78-3. Accordingly, Petitioner's assertion that his guilty plea was not factually supported is both meritless and he otherwise waived his ability to attack his conviction on that basis.

   d. **The record does not support Plaintiff's assertion that Mr. Scherier was ineffective for permitting Petitioner to sign a plea deal and withdrawing the motion to suppress.**

In Counts Five and Six, Defendant argues that Mr. Scherer provided ineffective assistance of Counsel during plea negotiation stage for withdrawing his motion to suppress and allowing Petitioner to enter into a plea agreement that was not factually supported.

To successfully argue a claim of ineffective assistance of counsel for failing to file a suppression motion, petitioner must "demonstrate that there was both a reasonable probability that

he would have prevailed on the motion to suppress and a reasonable probability that, if his confessions were suppressed, he would have been acquitted." *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (internal quotations omitted). In examining counsel's conduct, the courts are "highly deferential" to counsel and presumes that the decisions constitute reasonable litigation strategy. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005).

Mr. Scheirer explains in his affidavit that he withdrew his motion to suppress pursuant entering the plea agreement. ECF No. 78-2. He explains while he viewed the motion as meritorious, he had reservations about whether the motion would ultimately be granted. *Id*. He also did not believe that there would be a clear path toward acquittal at trial. *Id*. Mr. Scheirer states that he advised Petitioner on the likelihood of success of the motion and the potential outcome at trial. The Court also observes that the Government agreed to dismiss Count Two, another Possession of Methamphetamine with Intent to Distribute.

Petitioner complains about the pressure Mr. Scheirer placed upon him to plead guilty. He does not allege, however, that Mr. Scheirer intimidated or lied to him. Often, the stakes are high in the context of a criminal prosecution. An attorney's honest assessment of the seriousness of the case and the risks of rejecting a plea agreement may feel like pressure to a criminal defendant. That, however, is not the fault of counsel, but the natural consequence of making an important decision that could lead a criminal defendant to spending more time in prison if he refuses a plea agreement.

Moreover, at his change of plea hearing before the magistrate judge, Petitioner twice confirmed that he was not threatened to plead guilty. A "defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." *United States v. Seybold*, 979 F.2d 582, 589 (7th Cir. 1992) (quoting *United States v. Darling*, 766 F.2d

1095, 1101 (7th Cir. 1985)). Petitioner's clear statements in open court are strongly presumed true.

Petitioner's description of Counsel assessment that Petitioner could face a longer sentence if he

did not plead guilty also does not constitute threats sufficient to overturn Defendant's guilty plea.

### e. The record directly conflicts with Petitioner's assertion that he was unaware of his rights to appeal after sentencing, but the Court cannot conclusively determine whether Petitioner attempted to contact Counsel regarding an appeal.

Petitioner claims that he was unaware of his ability to appeal. However, at the hearing the

Court confirmed though he had waived his appeal rights, he had 14 days to file an appeal himself

or ask Mr. McCall to do so on his behalf. ECF No. 59 at 14. Petitioner complains that McCall did

not advise him of his right to appeal since he could appeal plain error, jurisdictional issues, and

ineffective assistance of counsel. Petitioner further claims that he called McCall's office, but his

office refused to take collect calls. Then, five months later when he had free calls, he called

McCall's office and his office advised him that McCall was not his attorney after sentencing.

When a petitioner provides an affidavit that supports factual allegation that if true, may

entitle him to relief, a hearing may be required. *Lafuente v. United States*, 617 F.3d 944 (7th Cir.

2010).  In his sworn motion, Petitioner represents that he was unable to contact counsel via

telephone because his office refused to accept his collect calls. He later provides another affidavit

as an attachment to his reply brief stating that he was not able to file an appeal because his office

refused to accept any of his phone calls. He appears to concede that the day of sentencing, he did

not ask his counsel to appeal. He claims that at some time he attempted to contact McCall but does

not explicitly state whether it was within the relevant timeframe.

McCall also submitted an affidavit that states that Petitioner never directed him to file an

appeal. ECF No. 78-34. He states that other than contact regarding a potential cooperation

reduction pursuant to Rule 35, Mr. McCall never received any phone calls or correspondence from

Petitioner requesting he file a notice of appeal. McCall disputes Davis's assertion that he could not

14

reach him, explaining that his office routinely accepts all collect calls from clients and responds to clients. McCall also states that he does not recall Davis contacting him within a reasonable time after his sentencing other than to inquire about the Rule 35 process, which indicates Petitioner did successfully reach Mr. McCall for other reasons.

Moreover, the sentence was the minimum that the Court could sentence him to serve. There was nothing surprising that happened at sentencing and Petitioner signed the plea agreement that clearly outlined his waiver of his ability to appeal that explained Petitioner was subject to mandatory minimum sentences. Petitioner acknowledged at his sentencing hearing that he was subject to mandatory minimum sentences and appeared to acknowledge his guilt. Sentencing went as expected in that Petitioner received only the mandatory minimum sentence. That Petitioner agreed to move forward with sentencing and received only the mandatory minimum sentence undermines his assertion that he wished to appeal.

However, the Seventh Circuit has repeatedly confirmed that an attorney ignoring his client's instruction to file an appeal is a constitutional violation "regardless of whether an appeal was likely to succeed." *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Peguero v. United States*, 526 U.S. 23, 28 (1999); *Rodriguez v. United States*, 395 U.S. 327, 330 (1969); *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010); *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994)). Once a petitioner has alleged that counsel failed to file an appeal "the only other question to ask is whether [the petitioner] had personal knowledge of the facts underlying his claim and, if so, whether anything made the allegations 'palpably incredible' or discovery otherwise pointless." *Id*. (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *see also Mahaffey v. Ramos*, 588 F.3d 1142, 1145 (7th Cir. 2009)). Here,

15

petitioner had personal knowledge of whether he attempted to contact counsel. While McCall's affidavit casts doubt on Petitioner's claims, McCall's sworn statement does not make Petitioner's allegations "palpably incredible."

Accordingly, the Court is compelled to hold an evidentiary hearing on the narrow issue of whether Petitioner attempted to contact counsel regarding filing an appeal.

## CONCLUSION

In accordance with Seventh Circuit precedent the Court is compelled to hold an evidentiary hearing on the issue of whether Petitioner attempted to contact McCall regarding filing an appeal. Rule 8(c) of the Rules Governing Section 2255 Proceedings, provides that "[i]f an evidentiary hearing is required, the judge shall appoint counsel for a movant who qualifies for the appointment of counsel under 18 U.S.C. § 3006A(g) . . .." Rule 8(c), 28 U.S.C. foll. § 2255. The Court has already determined that Petitioner qualified for appointed representation during the criminal proceedings. Accordingly, the Court will appoint Counsel for the purpose of the evidentiary hearing.

As to the other issues Petitioner raised, his arguments were otherwise unsupported, as explained above. Petitioner's motion is at times disjointed and the precise claim he is making is not always clear. To the extent Petitioner intended to raise additional claims in his motion, he did not support those claims, and he did not demonstrate either that counsel was ineffective or that he was prejudiced by Counsel's behavior.

Accordingly, Petitioner's § 2255 Motion [62] is DENIED in part as to all issues except whether Petitioner attempted to contact counsel to file an appeal. The Clerk's Office is DIRECTED to coordinate securing Counsel for Petitioner, as the law requires that he have representation for the evidentiary hearing. Once Petitioner has been appointed Counsel, the Court will contact

16

Counsel for both parties to coordinate a date for a hearing on the narrow issue of whether Petitioner attempted to contact counsel to file an appeal.

     ENTERED this, 22nd day of July, 2022.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
